**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TESCO CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. H-08-2531** |
| | § | |
| **WEATHERFORD INTERNATIONAL,** | § | |
| **INC., NATIONAL OILWELL VARCO,** | § | |
| **L.P., OFFSHORE ENERGY SERVICES,** | § | |
| **INC., and FRANK'S CASING CREW &** | § | |
| **RENTAL TOOLS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the following motions:

- Frank's Casing Crew & Rental Tools, Inc.'s ("Frank's") Motion for Attorney's Fees for Post-Trial Discovery and New Trial (if Granted) (Doc. No. 633);
- Frank's Post-Trial Motion for Summary Judgment on Obviousness Based Upon Tesco Prior Art Brochures (Doc. No. 713);
- National Oilwell Varco, L.P. ("NOV") and Offshore Energy Services, Inc.'s ("OES") Motion for Summary Judgment of Patent Invalidity Pursuant to 35 U.S.C. § 103(a) Obviousness (Doc. No. 723); and
- Frank's, NOV, and OES's Motion for Reconsideration of the Court's Denial (Doc. No. 805) of Defendants' Post-Trial Motions for Summary Judgment on an On-Sale Bar (Doc. Nos. 712, 721).  (Doc. No. 813.)

The Court also previously stayed decision of the following motions:

- Frank's Motion for Entry of Judgment of Inequitable Conduct (Doc. No. 590); and
- Frank's Revised Sealed Motion for Judgment of Inequitable Conduct in View of *Therasense*.  (Doc. No. 609.)

This Memorandum and Order addresses the post-trial motion for summary judgment filed

by Frank's (Doc. No. 713) and the post-trial motion for summary judgment filed jointly by NOV

1

and OES (Doc. No. 723) on the question of obviousness.  Upon considering the Motions, all responses thereto, and the applicable law, the Court finds that Frank's Post-Trial Motion for Summary Judgment on Obviousness Based Upon Tesco Prior Art Brochures (Doc. No. 713) and NOV and OES's Motion for Summary Judgment of Patent Invalidity Pursuant to 35 U.S.C. § 103(a) Obviousness (Doc. No. 723) must be **GRANTED**.

## I.    BACKGROUND

This proceeding was filed in 2008, and has been the subject of previous rulings of the Court. *E.g.*, Doc. Nos. 386, 805.  The background set forth in earlier writings will not be repeated, except as necessary to provide context for the facts and law discussed herein.

Tesco owns U.S. Patent No. 7,140,443 ("the '443 patent") and U.S. Patent No. 7,377,324 ("the '324 patent").  The '324 patent, granted in May 2008, is a continuation of the '443 patent, granted in November 2006.  The two patents describe a tool used on a drilling rig.  Drilling rigs are used to bore and encase holes in the ground for the purpose of extracting oil.  The patents describe an apparatus and method for handling the sections of the pipe or pipe strings that are used for drilling or lining a well bore.  Stated summarily, the patent covers a "Case Drilling System with a link tilt" referred to by all parties as "CDS with link tilt."  More detailed descriptions of the device and its function can be found in the Court's earlier opinions.

Tesco brought suit against Weatherford International, Inc., NOV, OES, and Frank's for infringement of those patents.[1]  After re-examination of the patents with the United States Patent and Trademark Office ("PTO"), lengthy discovery and many pre-trial motions, the Court and the parties spent three weeks in jury trial.  The jury found that claims 27 and 55 of the '443 patent,

---

[1] The Court will refer to the remaining defendants, NOV, OES, and Frank's, collectively as "Defendants."

and claim 14 of the '324 patent were valid.  The jury found that claims 13, 25 and 59 of the '443 patent and claims 1 and 12 of the '324 patent were not valid.

Plaintiff sought to have the Court enter judgment on the verdict.  Defendants sought judgment as a matter of law in their favor.  The Court did neither.  Rather, because of internal inconsistencies in the jury verdict, and because of concern – re-enforced during the trial – that Tesco had not produced all of the discovery that Defendants had properly requested, the Court authorized limited additional discovery.

After engaging in limited post-trial discovery, the parties filed numerous post-trial motions.  The Court has already addressed and denied Defendants' motions for summary judgment under the on-sale bar provision, 35 U.S.C. § 102(b).  (Doc. No. 805.)  The Court has also held several extensive hearings about the post-trial motions, and recently denied Tesco's motion for entry of judgment on the verdict, and NOV and OES's motion for summary judgment based on anticipation under 35 U.S.C. § 102(b).  (Doc. No. 808.)  The Court now turns to the post-trial motions for summary judgment filed by Frank's, NOV and OES on the question of obviousness.  (Doc. Nos. 713, 723.)

Defendants argue that Tesco's patent claims are invalid under 35 U.S.C. § 103(a) because an August 2002 brochure ("August brochure") created and distributed by Tesco revealed the only novel aspect of Tesco's invention, rendering the invention obvious as a combination of prior art.  (Doc. No. 713, at 16–20; Doc. No. 723, at 8–12.)  They also argue that moving the link arms down to the casing drive system was obvious to try because the inadequate reach of the link arms used in prior art was a known problem with a limited number of solutions.  (Doc. No. 713, at 15–16; Doc. No. 723, at 6–7.)  The Court addresses the latter argument first.  Finding it dispositive, the Court does not decide the former.

## II.    APPLICABLE LAW

### A.  Legal Standard for Summary Judgment

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c)(2).   "Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1302 (Fed. Cir. 2010). "[A] dispute about a material fact is genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  *Id.* at 151.  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence.  Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996) *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

During trial, as a sanction against Tesco for discovery abuses, this Court shifted the burden and required Tesco to prove by a preponderance of the evidence that the patent claims were valid.  (Doc. No. 506, Supp. Jury Inst., at 17.)    Although Tesco continues to bear the burden, the Court notes that it would reach the same conclusion in this case regardless of the allocation of the burden.

### B.  Obviousness

Defendants assert that they are entitled to summary judgment based on the obviousness of all of the claims at issue in this lawsuit.  A patent claim is invalid "if the differences between the [claimed] subject matter . . . and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).

"Obviousness is a question of law based on underlying findings of fact."  *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009).  Whether a patent is invalid due to obviousness depends on the following factual determinations: (1) the scope and content of the prior art; (2) the difference between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) any objective evidence of nonobviousness."  *Transocean*, 617 F.3d at 1303 (citing *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966)); *Kubin*, 561 F.3d at 1355.  Objective indicia of nonobviousness include evidence of a long-felt but unsolved need, the commercial success of the product that resulted from the patent, the failure of others to make the invention, prior art that teaches away from using the patented process, and acclamations the product receives when released and copying of the product by others.  *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1376–1380 (Fed. Cir. 2000).  However, "a strong prima facie obviousness showing may stand even in the face of considerable evidence of secondary

considerations." *Rothman v. Target Corp.*, 556 F3d 1310, 1322 (Fed. Cir. 2007) (*citing Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007)).

"The issue of obviousness is determined entirely with reference to a *hypothetical* person having ordinary skill in the art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) (citation omitted) (emphasis in original).  That hypothetical person is presumed to be aware of all pertinent prior art.  *Id.*  When assessing the scope of prior art, a court may consider references that are not enabling under 35 U.S.C. § 102(b).  *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991) ("While a reference must enable someone to practice the invention in order to anticipate under § 102(b), a non-enabling reference may qualify as prior art for the purpose of determining obviousness under § 103.").  A reference qualifies as prior art under 35 U.S.C. § 103(a) "for whatever is disclosed therein."  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1357 (Fed. Cir. 2003); *see also Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("Even if a reference discloses an inoperative device, it is prior art for all that it teaches.").  Although a finding of obviousness requires evidence that supports the four *Graham* factors, "it may also include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference. . . ."  *Perfect Web Techs v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009).

"[A] combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007).  In *KSR*, the Supreme Court acknowledged that it can be "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine elements" of prior art, but nonetheless unambiguously rejected any bright line rule

requiring courts to seek out "precise teachings directed to the specific subject matter of the challenged claim" that would make the patented claim obvious. *Id.* at 418. Instead, the *KSR* Court recognized that design incentives, market forces, and the inferences and creative steps that a person of ordinary skill in the art would employ may also make a combination of known elements obvious. *Id.* at 418–19. The Federal Circuit has also indicated that the "nature of the problem to be solved" may make the combination of prior art elements obvious. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666 (Fed. Cir. 2000) (noting that "there were no findings on whether there was a disadvantage to the prior systems, such that the 'nature of the problem' would have motivated a person of ordinary skill to combine the prior art references"); *Perfect Web*, 587 F.3d at 1329.

The Supreme Court further recognized that a patent may be invalidated if making variations to prior art is "obvious to try." *KSR*, 550 U.S. at 417, 421. Specifically, it recognized that

> [w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

*Id.* at 421. The Federal Circuit has provided further clarification, explaining when a patent for an invention that is "obvious to try" may not be invalidated as obvious under 35 U.S.C. § 103(a). *See Kubin*, 561 F.3d at 1359–1360. Where an inventor simply tries "each of numerous possible choices," "throw[ing] metaphorical darts at a board filled with combinatorial prior art possibilities, courts should not succumb to hindsight claims of obviousness." *Id.* at 1358 (citation omitted). Similarly, when "what was 'obvious to try' was to explore a new technology or general approach that seemed to be a promising field of experimentation, where the prior art

gave only general guidance as to the particular form of the claimed invention or how to achieve it," courts should not invalidate a patent as obvious. *Id.*

### III.   ANALYSIS

#### A.  Obvious to try

Defendants argue that, prior to Tesco's claimed invention, a person of ordinary skill in the art already would have been familiar with the following prior art in existence at the time of the alleged invention: (1) a top drive, with link arms pivotally connected to it; (2) a pipe handling, or "link tilt," system; (3) a pipe engaging apparatus; and (4) an anti-rotation device.   (Doc. No. 713, at 6–8; Doc. No. 723, at 8.)   They present copious evidence in support of this assertion. (Doc. No. 713, at 6–8; Doc. No. 723, at 8; Jan. 13, 2010 Beierbach Dep. 76:3–78:8, 115:25–116:21, 135:4–136:10; April 6, 2010 Nikiforuk Dep. 83:22–84:24; April 22, 2010 Warren Dep. 42:8–19, 133:11–23; July 13, 2010 Warren Dep. 65:9–67:2, 69:12–76:12, 77:11–25; July 14, 2010 Warren Dep. 151:17–25, 200:3–16; July 15, 2010 Fontenot Dep. 61:16–63:10; Trial Tr. 319:8–320:3, 753:7–754:8).   Defendants also provide evidence that the only inventive concept of Tesco's CDS with link tilt was the relocation of the link arms from the top drive to the casing drive.   (Doc. No. 713, at 7–8, 20; Doc. No. 723, at 10; Jan. 13, 2010 Beierbach Dep. 97:15–98:16; Jan. 14, 2010 Brown Dep. 173:20–175:19; April 6, 2010 Nikiforuk Dep. 101:2–23; April 22, 2010 Warren Dep. 87:11–88:22, 90:25–91:12; July 13, 2010 Warren Dep. 64:5–66:20; July 14, 2010 Warren Dep. 73:4–10.)[2]

---

[2] Defendants also argue vigorously that the August brochure, which Plaintiff failed to produce in original form prior to trial, revealed this innovation.  (Doc. No. 713, at 8–9, 20; Doc. No. 723, at 10–12.)  Tesco responds, just as vigorously, that the August brochure cannot be considered to reveal the invention because it includes only one, relatively small rendering that a person of ordinary skill in the art would not have been able to develop an invention from.  (Doc. No. 737, at 9–12.)  The Court reaches its decision that the relocation of the link arms was obvious to try even absent the August brochure.  Accordingly, the Court need not evaluate whether the August brochure did, in fact, reveal the relocation of the link arms.

Tesco does not appear to contest that (1) a top drive, with link arms pivotally connected to it, (2) a pipe handling, or "link tilt," system, (3) a pipe engaging apparatus, and (4) an anti-rotation device were prior art at the time of its alleged invention. (*See generally* Doc. No. 737.) Tesco does, however, dispute the characterization that the patented invention involved a mere relocation of the link arms, stating that Tesco's patents disclose "pivotally connected link arms in a non-rotable manner to a pipe engaging apparatus hung below a top drive." (*Id.* at 9.)  In support of this claim, Tesco cites to trial testimony of Boyadjieff and its own expert, Tommy Warren. (*Id.*; Trial Tr. 2133:25–2134:6, 2275:12–25, 2309:19–2310:16, 2392:12–21, 2394:20–2395:8, 2396:6–16, 2411:4–7, 2411:19–2412:3, 2414:12–17, 2414:25–2415:15.)[3]

The Court cannot agree with Tesco's contention that the novelty of its patents-in-suit extends beyond the relocation of the link arms.[4]  When asked to distinguish the claimed invention and the prior art, Nikiforuk and Warren consistently identify one difference, the relocation of the link arms, which drives all other distinctions; all additional differences identified, such as the development of an anchor for the link arms, and a decrease in the weight and size of the link arms, were attendant modifications which simply took account of the relocation and the lower weight the link arms would now bear. (April 6, 2010 Nikiforuk Dep. 101:2–23; Warren Dep. 87:11–88:22, 90:25–91:12; July 13, 2010 Warren Dep. 64:5–66:20; July 14, 2010 Warren Dep. 73:4–10; Trial Tr. 168:5–15, 170:10–25, 174:20–176:13, 715:20–716:3.) Nor is the testimony Tesco cites in support of its assertion that the patents-in-suit reveal "more than the mere relocation of the link arms" to the contrary. (Doc. No. 737, at 9.)  This testimony repeatedly emphasizes only that none of the brochures depicting prior art has ever shown link

---

[3] Parties do not dispute Tommy Warren's, Tesco's expert, description of the level of ordinary skill in the art. (Doc. No. 713, at 19 n. 97; Doc. No. 723, at 10; Trial Tr. 2371:21–2372:22.)

[4] The Court reiterates that it does not determine whether the August brochure had already disclosed this alleged innovation.  For the purpose of this analysis, the Court assumes, without deciding, that this aspect of the patents-in-suit was not previously disclosed.

arms connected to a pipe engaging apparatus and fitted for anti-rotation.  (*See* Trial Tr. 2133:25–2134:6, 2275:12–25, 2309:19–2310:16, 2392:12–21, 2394:20–2395:8, 2396:6–16, 2411:4–7, 2411:19–2412:3, 2414:12–17, 2414:25–2415:15.)  However, there is no requirement that a single reference reveal every aspect of the claimed invention to be considered prior art under 35 U.S.C. § 103(a).  *See Symbol Techs.*, 935 F.2d at 1578; *Amgen*, 314 F.3d at 1357.  Tesco proffers no evidence suggesting that prior art does not reveal link arms capable of being pivotally connected, anti-rotation devices, a pipe engaging apparatus, or a top drive.  Accordingly, even by its own characterization that patents-in-suit disclose "pivotally connected link arms in a non-rotable manner to a pipe engaging apparatus hung below a top drive," the only aspect of the patents-in-suit not revealed in prior art is the location of the link arms.  (Doc. No. 737, at 9.)

Defendants offer evidence showing that the inadequate reach of link arms attached to a top drive when a pipe engaging apparatus was added below the top drive was a known problem in the field.  (Doc. No. 713, at 15; Tr. Ex. 180 Schneider Decl., at 7; Trial Tr. 2262:2–11.)  They argue, relying on expert testimony of George Boyadjieff, that Tesco's solution to this problem, lowering the link arms, was obvious to try because there were only two possible solutions to this problem: extending the link arm to allow additional reach, or lowering the link arms down from the top drive and decreasing the amount of reach necessary.  (Doc. No. 713, at 15–16; Trial Tr. 2262:2–2263:23.)

Tesco contends that moving the link arms down from the top drive to the casing drive system was not obvious to try.  (*Id.*, at 7–8.)  In support of its argument, Tesco cites to testimony by Kevin Nikiforuk, the individual who conceived of moving the link arms down.  (*See, id.*; Trial Tr. 706:14–713:4, 714:9–717:4.)  Nikiforuk explained that he had been working on developing functional link arms for Tesco's casing clamp and casing drive system for two years, before

realizing the possibility of attaching them below the top drive.   (Trial Tr. 710:9–18.)  He also described the adjustments that had to be made to the link arms, including redesigning them to work with a lighter load, all of which took between seven and nine months.  (*Id.* 714:9–717:1.)

After reviewing the extensive record in this case, the Court agrees with Defendants that repositioning the link arms was obvious to try.  This case presents a quintessential example of when a solution is obvious to try.  When a casing running tool is placed below a top drive, extra distance is created between the top drive, and consequently, the link arms attached to it, and the ground.  Even a layperson can understand that there are but two possible solutions: extend the link arms, or lower them closer to the ground.  (*See* Trial Tr. 2262:2–17.)  *Perfect Web*, 587 F.3d at 1329 (recognizing that a finding of obviousness may, in addition to the four *Graham* factors, "include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference. . .").

This is not a case of "numerous potential solutions," where an inventor simply tries each one, "throw[ing] metaphorical darts at a board filled with combinatorial prior art possibilities." *See Kubin*, 561 F.3d at 1358 (citation omitted).  Tesco does not appear to contest that there were only two possible solutions to the problem at hand.  (*See generally* Doc. No. 737.)  Instead, it inexplicably claims that only one of the solutions, lengthening the link arms, was obvious to try.  (Doc. No. 737, at 8.)  Courts have rejected arguments that claimed technology was obvious to try when there was a plethora of possible solutions, not two.  *See, e.g.*, *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1357, 1359 (Fed. Cir. 2007) (upholding district court's finding that claimed compounds were not obvious to try because there was nothing in the prior art that would have "suggest[ed] to one of ordinary skill in the art that those nine compounds, out of the hundreds of millions of compounds covered by the [prior art], were the best performing

compounds as antidiabetics, and hence targets for modification to seek improved properties"); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1070–73 (Fed. Cir. 2012). Similarly, there is no indication that Tesco was venturing into a new field of experimentation, "where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it." *Kubin*, 561 F.3d at 1358 (citation omitted). Tesco was tinkering with prior art, figuring out practical adjustments that would enable known technology, a top drive, a casing running tool, and link arms, to work together, and it was doing so using known methodologies such as anti-rotation devices. (Jan. 13, 2010 Beierbach Dep. 76:3–78:8, 115:25–116:21, 135:4–136:10; April 6, 2010 Nikiforuk Dep. 83:22–84:24; April 22, 2010 Warren Dep. 42:8–19, 133:11–23; July 13, 2010 Warren Dep. 65:9–67:2, 69:12–76:12, 77:11–25; July 14, 2010 Warren Dep. 151:17–25, 200:3–16; July 15, 2010 Fontenot Dep. 61:16–63:10; Trial Tr. 319:8–320:3, 753:7–754:8).

Tesco appears, instead, to argue that moving the link arms down to the casing drive system was not obvious to try because of the amount of time and effort it took Nikiforuk and others to conceptualize and implement the solution. (Doc. No. 737, at 8; Trial Tr. 710:9–18, 714:9–717:1.) The Court does not doubt that much effort went into both the realization that relocating the link arms was mathematically feasible and the engineering to implement the concept. (*See* Trial Tr. 707:19–708:15; 714:9–717:1.) Although execution of the concept may ultimately have been time-consuming and required substantial engineering adjustments, this does not detract from the fact that implementing this solution was obvious to try.

Tesco also puts forth substantial evidence relevant to the final *Graham* factor, objective indicia of non-obviousness. (Doc. No. 737, at 16–21.) Specifically, Tesco provides evidence of both its own commercial success, and the commercial success of the allegedly infringing tools

12

made by NOV, OES and Frank's.  (Doc. No. 737, at 16–18; Murray Dep. 236:14–25; Trial Tr. 502:1–503:2, 651:25–652:14, 1120:9–16, 1121:3–18, 2385:14–2386:5.)   It also provides evidence indicating that Defendants were unable, for a long time, to develop viable competitor tools, and that NOV finally succeeded in developing its own tool only when it partnered with OES, who had two of Tesco's tools.  (Doc. No. 737, at 18–21; Murray Dep. 82:1–8; Mason Dep. 23:24–24:7; Veverica Dep. 33:23–34:7; Trial Tr. 635:1–4, 935:3–25, 2389:1–15.)   Nonetheless, the Court does not think this evidence can overcome the strong showing that lowering the link arms was obvious to try.  *Leapfrog*, 485 F.3d at 1162.  As discussed above, the substantial time and effort required to implement a solution does not mean that it was not obvious to *attempt*. Furthermore, commercial success, although a possible indicator of nonobviousness, can also evidence simple market demand for a product.  *KSR*, 550 U.S. at 418–19.  Finally, the Court notes that this is not a case where a long-felt but unresolved need existed.  *Ecolochem*, 227 F.3d at 1376.  As Boyadjieff explained, prior to 2000, land rigs with top drives simply did not exist; these rigs began to be built in 2000, and the first one was rigged up in late 2000 or early 2001. (Trial Tr. 2260:1–20.)  Thus, given that at the time Tesco developed the CDS with link tilt, rigs with top drives were themselves a recent development, there could be no long-standing need to create a pipe engaging apparatus with pivotally connected link arms below the top drive.  (*Id.*)

The Court recognizes that its holding, while relying often on trial testimony, turns little, if at all, on evidence discovered post-trial.  Indeed, the Court acknowledges, regretfully, that this ruling should perhaps have been rendered as a matter of law at the close of trial, if not as early as at the pre-trial motions stage.  Pre-trial, only NOV moved for summary judgment based on obviousness.  (See Doc. No. 300, Defendant National Oilwell Varco, L.P.'s Motion for Summary Judgment of Invalidity Due to Obviousness (35 U.S.C. § 103(a)).)  Although NOV briefly

mentioned the obvious to try standard in its pre-trial motion for summary judgment, the thrust of its argument was that the combination of prior art "teach[es] every limitation of the invention claimed in suit." (Doc. No. 300, at 16, 18.) This Court rejected NOV's argument, noting that Tesco raised a genuine issue of material fact as to whether any of the prior art revealed the pivotal connection of the link arms to the pipe engaging apparatus. (Doc. No. 386, Memorandum and Order, at 42.) Immediately after trial, Frank's moved for judgment as a matter of law due to obviousness, and again argued only that Tesco's claimed invention was obvious as a combination of prior art, namely an April 2002 brochure created by Tesco and the previously discussed August brochure. (Doc. No. 467, at 19–25.) The Court undoubtedly bears some of the blame for not bridging the gap itself, and considering then whether relocating the link arms was obvious to try. The Court now corrects its earlier oversights, unfortunately after heavy costs have been incurred by all involved. Frank's Post-Trial Motion for Summary Judgment on Obviousness Based Upon Tesco Prior Art Brochures (Doc. No. 713) and NOV and OES's Motion for Summary Judgment of Patent Invalidity Pursuant to 35 U.S.C. § 103(a) Obviousness (Doc. No. 723) are hereby **GRANTED**. The Court notes that it reaches this conclusion independently of whether Plaintiff or Defendants have the burden of proof on the issue.

### B.  Obvious as a combination of known elements

Defendants also argue that the August brochure, which first emerged during trial, disclosed the sole remaining innovation of the patents-in-suit, the relocation of the link arms. (Doc. No. 713, at 8–9, 20; Doc. No. 723, at 10–12.) In support of this argument, they cite testimony by Nikiforuk and Boyadjieff that the August brochure does indeed depict link arms connected to a pipe engaging apparatus. (Trial Tr. 776:15–777:24, 778:19–21, 2154:9–12,

2155:5–11.)   Accordingly, Defendants argue that the patents-in-suit are nothing more than a combination of prior art.  (Doc. No. 713, at 8–9, 20; Doc. No. 723, at 10–12; Trial Tr. 2161:15–2162:11.)  Tesco respond that the August brochure does not teach the relocation of the link arms because it includes only one small rendering, which would not have enabled a person of ordinary skill in the art to develop the alleged invention.  (Doc. No. 737, at 9–12.)  In support of their argument, they cite testimony of their own experts, Gary Wooley and Warren, who explain that a person of ordinary skill in the art would not be able to ascertain where the link arms were connected from examining the August brochure in its original size.  (Trial Tr. 1796:9 –1797:2, 2411:19–2412:3.).  Defendants dispute the assertion that a person of ordinary skill in the art would not be able to determine the location of the link arms by simply examining the brochure with his naked eye, and further claim, that in any event, the location of the link arms in the August brochure is prior art even if it must be enlarged to be seen.  (Doc. No. 713, at 16 –19; Doc. No. 723, at 11–12.)

Because the Court grants summary judgment based on its determination that moving the link arms down was obvious to try even absent the August brochure, it need not decide whether Tesco's claims are obvious as a combination of prior art that includes the August brochure. Accordingly, the Court does not decide whether the location of the link arms in the rendering in the August brochure would be apparent to a person of ordinary skill in the art without enlargement.  Nor does the Court determine whether the relatively small size of the rendering in the August brochure is of import.

IV.    CONCLUSION

Frank's Post-Trial Motion for Summary Judgment on Obviousness Based Upon Tesco Prior Art Brochures (Doc. No. 713) and NOV and OES's Motion for Summary Judgment of Patent Invalidity Pursuant to 35 U.S.C. § 103(a) Obviousness (Doc. No. 723) are **GRANTED**.

In light of this decision, Frank's Motion for Entry of Judgment of Inequitable Conduct (Doc. No. 590), Frank's Revised Sealed Motion for Judgment of Inequitable Conduct in View of *Therasense* (Doc. No. 609), and Defendants' Motion for Reconsideration of the Court's Denial (Doc. No. 805) of Defendants' Post-Trial Motions for Summary Judgment on an On-Sale Bar (Doc. Nos. 712, 721) (Doc. No. 813) are **TERMINATED AS MOOT**.

Because the Court reaches its decision in this case based on pre-trial evidence and trial testimony, it concludes that an award of fees is not appropriate. Frank's Motion for Attorney's Fees for Post-Trial Discovery and New Trial (if Granted) (Doc. No. 633) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 6th day of December, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE