IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TESCO CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. H-08-2531 |
| | § | |
| WEATHERFORD INTERNATIONAL, INC., | § | |
| NATIONAL OILWELL VARCO, L.P., | § | |
| OFFSHORE ENERGY SERVICES, INC., | § | |
| AND FRANK'S CASING CREW AND | § | |
| RENTAL TOOLS, INC., | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF TESCO CORPORATION'S OBJECTION AND MOTION TO STRIKE
DEFENDANT FRANK'S LATE DESIGNATION OF JAMES BRUGMAN AS AN
EXPERT WITNESS AND EXPERT REPORT**

Pursuant to Federal Rules of Civil Procedure 16(f) and 37(b), Plaintiff Tesco Corporation

("Tesco") files its Objection and Motion to Strike Defendant Frank's Casing Crew and Rental

Tools, Inc. ("Frank's") Late Designation of James Brugman as an Expert Witness and Expert

Report ("Motion") and in support thereof respectfully shows the Court the following:

## I.   INTRODUCTION

Because Frank's has been unable to find any evidence post-trial to support its inequitable

conduct claims, Frank's has resorted to re-hiring its infringement expert, James Brugman, to

provide new expert opinions on inequitable equitable conduct based on evidence Frank's had

well before trial.  Indeed, Mr. Brugman's inequitable conduct opinions are based on the content

of the April 2002 brochure, which Tesco produced well before trial, and which Defendants used

in pre-trial discovery and at trial.  Further, in a January 2010 deposition, Defendants questioned

Evert Beierbach, one of the co-inventors, about the April 2002 brochure, and Mr. Beierbach

testified that it was not material.  As such, Frank's was aware of any inequitable conduct arguments related to the April 2002 brochure as early as January 2010, and Frank's could have and should have retained Mr. Brugman to prepare his opinions at that time.  Yet, Frank's waited almost *four years* to designate Mr. Brugman to provide expert testimony on this brochure to rebut Mr. Beierbach's 2010 testimony.  Frank's failure to timely disclose Mr. Brugman's new inequitable conduct opinions is inexcusable, and the Court should strike Mr. Brugman's expert designation and report as untimely.[1]

The Court should also strike Mr. Brugman and his report because his opinions do not support a fact at issue in this case.  Based on his report, Mr. Brugman was hired to provide an expert opinion that the April 2002 brochure would have been material to the Patent and Trademark Office's ("PTO") examinations of the patents-in-suit.  However, the PTO and the Patent Trial and Appeal Board ("PTAB") have already resolved this issue by finding that the April 2002 brochure is not material.  Therefore, Mr. Brugman's opinions are unhelpful and should be excluded.

For these reasons, the Court should strike Mr. Brugman's report and Frank's recent designation of Mr. Brugman as an inequitable conduct expert.

## II.   <u>ARGUMENT & AUTHORITIES</u>

The Court should strike Frank's untimely designation of Mr. Brugman as an inequitable conduct expert witness, and his expert report, pursuant to Federal Rules of Civil Procedure 16 and 37.  Rule 16(b) authorizes federal courts to control and expedite the discovery process through a scheduling order.  *See* Fed. R. Civ. P. 16(b), *Barrett v. Atlantic Richfield Co.,* 95 F.3d

---

[1] Mr. Brugman's report is also untimely because the Court's deadline for designating experts was in 2010, and the Court's July 29, 2013 Order permitting limited discovery on inequitable conduct does not permit the parties to designate new experts or file new expert reports.

375, 380 (5th Cir. 1996).  Consistent with the authority vested in the trial court by Rule 16, appeals courts give the trial court broad discretion to preserve the integrity and purpose of the pretrial order.  *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).  Moreover, Rule 37(b)(2)(B) authorizes the district court to impose sanctions on a disobedient party by refusing to allow that party to introduce designated matters into evidence.  FED. R. CIV. P. 37(b)(2)(B).

**A.    There is No Plausible Excuse for Frank's Untimely Designation Because Frank's Has Known of Any Inequitable Conduct Arguments Related to the April 2002 Brochure Since January 2010**

First, there is no plausible explanation for Frank's late designation of Mr. Brugman as an expert on inequitable conduct.  Mr. Brugman's expert opinions are based on the April 2002 brochure.  *See* the Expert Report of James Brugman, dated December 2, 2013, attached as Exhibit 1.  Indeed, Frank's hired Mr. Brugman to testify that the April 2002 is material, and Tesco should have produced that brochure to the PTO during the examinations of the patents-in-suit.  *See id*.

However, Frank's has had the April 2002 brochure since April 2009, and Defendants have used the April 2002 brochure in pre-trial discovery, pre-trial motions, and at trial.  For instance, Defendants used the April 2002 brochure during the first deposition of co-inventor, Evert Beierbach, on January 13, 2010.[2]  During this deposition, Defendants questioned Mr. Beierbach about the contents of the April 2002 brochure.  Defendants also inquired why the April 2002 brochure was not produced to the PTO during the examinations of the patents-in-suit, and Mr. Beierbach testified that he "didn't think it was material or relevant."  *See* Deposition of Evert Beierbach, dated January 13, 2010, attached as Exhibit 2 at 139:10-17.

---

[2] In fairness, Frank's did not use the April 2002 brochure during Mr. Beierbach's first deposition (NOV did) because Frank's did not show up.  Nevertheless, Frank's undoubtedly received copies of the transcripts of Mr. Beierbach's deposition.

Clearly, as of January 2010, Frank's knew or should have known that Tesco did not produce the April 2002 brochure to the PTO during examination of the patents-in-suit because it did not believe that brochure was material or relevant. Frank's has had all of the information it needed for Mr. Brugman to prepare his recent inequitable conduct opinions for almost four years. Because Frank's delayed providing Tesco with Mr. Brugman's opinions and report on inequitable conduct for almost four years, the Court should strike the untimely designation of Mr. Brugman.

Moreover, Frank's designation is untimely under the Court's scheduling order. Pursuant to the Court's last scheduling order, Frank's was required to designate experts in 2010. The Court's July 29, 2013 Order, which governs discovery for the bench trial on inequitable conduct, does not permit expert designations. (Dkt. No. 864). For this additional reason, the Court should strike Frank's designation as untimely.

**B.      Mr. Brugman's Testimony is Not Helpful**

The Court should also strike Mr. Brugman's opinions and report because they are not helpful or important to any disputed issue in this case. *See* Fed. R. Evid. 702(a); *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995) (expert opinion testimony is admissible if it is helpful to the jury in understanding the evidence or determining a fact in issue). Mr. Brugman's ultimate opinion is that the April 2002 brochure was material to the examinations of the patents-in-suit, and, therefore, Tesco should have provided the brochure to the PTO. This testimony is unhelpful because the materiality of the April 2002 brochure is no longer a disputed issue. Indeed, the PTO and PTAB have determined that the brochure was not material.

To establish materiality, Defendants must show by clear and convincing proof that "the PTO would not have allowed a claim had it been aware of the undisclosed prior art."

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290, 1291 (Fed. Cir. 2011).  In other words, the undisclosed prior art must be more than just relevant or important to the examiner; it must be art that invalidates the patent.

The evidence establishes conclusively that that the PTO did not find the brochures to be anything close to material.  ***Tesco submitted the April 2002 brochure to the PTO during reexamination proceedings, and the examiner considered the brochure and did not find it to be relevant to patentability***.  *See* November 24, 2009 Information Disclosure Statement, attached as Exhibit 3, at p. 2; May 4, 2010 Office Communication, attached as Exhibit 4, at p. 4.  Indeed, the examiner did not find this brochure to be relevant, much less "material" under *Therasense*. Frank's likewise submitted the April 2002 brochure to the PTO and was able to provide whatever analysis of the document Frank's believed would be helpful.  Frank's got the following response:

> Finally, with regard to the Tesco brochure, Requester [Frank's] contends that the brochure shows the channel key and guide structure that was not shown in prior references. However, in reviewing the document, there is no description of such structure and the examiner cannot identify with any degree of certainty the parts in the photographs that would indicate such a key and guide. Therefore, as no new technical teaching/feature is taught by the Tesco brochure, it does not raise a new question of patentability with regard to claims 1-70 of the '443 patent.

*See* Office Communication dated November 19, 2010, attached hereto as Exhibit 5.  The examiner thought so little of the relevance of this brochure that it was not cited as relevant prior art even though they were submitted.  *See* Ex. 4 at p. 4.

This finding was confirmed by the PTAB that found, after reviewing the brochure, that each and every original claim of the patents-in-suit is valid.  Indeed, on November 27, 2012, a three-member panel of judges on the PTAB unanimously reversed all of the patent examiner's rejections of Claims 1-3 and 5-34 of the '324 Patent and unanimously reversed the patent

examiner's rejections over prior art of Claims 1-17, 19-25, 27-37, 39-42, 51-59, and 61-70 of the '443 Patent.  *See* the decisions of the PTAB, attached hereto as Exhibits 6 and 7.

Because the brochure **was actually submitted to and considered by the PTO and the PTAB**, there is no need to guess about how the PTO views their materiality.  The examiner and the PTAB determined this disclosed reference to be immaterial.  As a matter of law, the April 2002 brochure is not material.  Thus, Mr. Brugman's expert opinions, as expressed in his expert report, are not important to any issue in dispute and are unhelpful.

*      *      *

For almost four years, Frank's has had all of the information it needed to allow Mr. Brugman to prepare the inequitable conduct expert opinions contained in his most recent report. Yet, Frank's delayed providing Tesco with Mr. Brugman's inequitable conduct opinions. Moreover, as discussed above, Mr. Brugman's expert opinions are not important or helpful, as the PTO has already spoken on the materiality of the April 2002 brochure.  Accordingly, the Court should strike Frank's expert designation of James Brugman as an inequitable conduct expert and strike Mr. Brugman's expert report.

## IV.    <u>CONCLUSION</u>

WHEREFORE, Tesco respectfully requests that the Court strike Defendant Frank's expert designation of James Brugman as an inequitable conduct expert and strike Mr. Brugman's expert report.  Tesco also request that the Court grant any such further and additional relief as Tesco may show itself to be justly entitled.

Respectfully Submitted,

Bracewell & Giuliani LLP


By:   */s/ Glenn A. Ballard, Jr.*
  Glenn A. Ballard, Jr.
  Attorney-In-Charge
  State Bar No. 01650200
  John F. Luman III
  State Bar No. 00794199

711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone:  (713) 223-2300
Telecopy:   (713) 221-1212


ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's electronic filing system pursuant to the Federal Rules of Civil Procedure on the 23rd day of December, 2013.

   */s/ Glenn A. Ballard, Jr.*
   Glenn A. Ballard, Jr.


#4430335